Filed 3/23/23  P. v. Castaneda CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F084409 |
| Plaintiff and Respondent, | (Super. Ct. No. VCF194024) |
| v. | |
| GEORGE ROBERT CASTANEDA, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Louis M. Vasquez, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Detjen, Acting P. J., Meehan, J. and Snauffer, J.

## INTRODUCTION

Petitioner George Robert Castaneda petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for premeditated attempted murder (§§ 187, subd. (a), 664). The superior court denied the petition at the prima facie stage on the grounds the record did not suggest petitioner was convicted under a felony murder, natural and probable consequences, or other imputed malice theory; a jury found he had committed the attempted murder with premeditation and deliberation; and this court determined in petitioner's direct appeal that substantial evidence supported the jury's findings that petitioner harbored the intent to kill and personally inflicted great bodily injury.

On appeal, petitioner argues the superior court erred in denying his resentencing petition by improperly relying on this court's opinion in his direct appeal and applying a sufficiency of the evidence standard. Additionally, petitioner contends the jury's findings of premeditation and deliberation, and personal infliction of great bodily injury, do not preclude resentencing as a matter of law.

We conclude the jury instructions and verdict establish petitioner is ineligible for resentencing as a matter of law. Accordingly, even assuming the court erred in aspects of its analysis, the petition was properly denied. We therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

### I.      Factual Background

We previously summarized the facts underlying petitioner's convictions as follows:[2]

---

[1] Undesignated statutory references are to the Penal Code. Since petitioner filed his petition, former section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the current section 1172.6 in this opinion.

[2] We provide the factual summary and related rulings from our prior opinion to give context for the parties' arguments and the superior court's ruling. However, neither

2.

"Around 8:30 p.m. on November 11, 2007, a car belonging to Carmen [C.³], parked outside the family home in Woodlake, California, was vandalized, with a car window broken and tire slashed. Jose [C.] was at home with his wife Carmen, son Rafael and daughter . . . . Jaime [P.], who was living with the [C.] family while looking for a place to live, also was at the [C.] home that evening. Jose [C.] testified that he heard a 'thump,' went outside, and saw the damage to the car and three young men running off.

"Rafael testified that he had just arrived home and had seen four people walking down the street. After he went inside the house, he heard a window break; he went back outside and saw a window of his mom's car was broken and a tire sliced. He also saw people running and heard someone yell 'Norte' and 'fucking scraps,' which he believed was an insult to a southern gang member. Carmen told Rafael not to follow the men, and to just call the police. Rafael told his mother that by the time the police arrived, the vandals would already be gone and they did not know who the vandals were. Then, he picked up a golf putter from the front yard and gave chase.

"The vandals ran to a house two blocks away. Jose got into his pickup and followed them to the yard of the house. '[W]hat I wanted was for them to be responsible for the damages that they caused. We've never done anything to them,' Jose testified. 'My intentions were to go speak with the parents at the house.' Rafael and [Jaime] followed on foot.

"As Jose, Rafael and [Jaime] arrived at the house, five more men came out of the house to join the men that were already outside. Jose testified that he noticed [petitioner] with a knife. '[W]hen I saw the knife and I saw they were all trying to come towards me and I said, "I don't want to fight, we don't want to fight." '

"Rafael testified that, after he, his father, and [Jaime] pursued the vandals to the house two blocks away, his father asked two individuals in the yard why they had vandalized the car. One of those two individuals was [petitioner]. Some seven more individuals exited the house and [Jaime] began arguing with those gathered about the vandalism. Rafael said his dad told them that they should leave. Rafael saw that the other

the factual background nor the analysis in the prior opinion is relevant to our disposition. (See § 1172.6, subd. (d)(3).)

³ Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

people were becoming mad, so he told [Jaime] to stop and 'let's go.' Then, he saw that [petitioner] had a knife. Rafael dropped the golf club, and Rafael and [Jaime] began to run toward Jose's pickup truck. Rafael testified that 'I think Jaime [P.] was kind of moving to the truck 'cause he was going to jump in, but I guess they got him before he got in the truck.'

"Jose said that he grabbed his son Rafael and pushed him into the truck, and 'then they just all jumped on Jaime [P.]. . . . They started beating him.' He estimated that eight people jumped on [Jaime]; he saw [petitioner] with a knife in his right hand. He testified: 'I got on the truck, I turned the truck around, I threw the high beams on just to see them. But when I threw the high beams on, they ran, and that's when I saw the knife or the blade there on -- in the right hand -- in his right hand.'

"Rafael saw [petitioner] stab [Jaime] about nine times while [Jaime] was 'laying on his back, and he was kicking and trying to hit him away from him, and [petitioner] was stabbing him.' Others in the group kicked and hit [Jaime], but Rafael did not see anyone else in the group stab [Jaime].

"One person in the group of attackers yelled, 'If somebody calls the police, we're going to find your family.' The attackers ran off, and Rafael got out of the truck, grabbed [Jaime] and 'picked him up, and that's when a lot of blood got on [his] shirt.'

"As the group drove off in the pickup truck towards the police department, they encountered a sheriff patrol car and an ambulance was called.

"During the police investigation that immediately followed, the police found two separate areas of blood, a broken knife blade, and the head of a broken putter in the street. Inside the house, police found a bloody plaid shirt, broken knife handle, and broken golf club handle. Police officers did not notice injuries to any of the other participants in the assault on [Jaime].

"[Jaime] suffered 'several lacerations on his left shoulder, one on the back of his neck, his torso, and . . . the middle finger on each of his hands were also cut.' He also sustained an abrasion to his hip. Some of the wounds were stapled shut. An officer attempted to interview [Jaime], but he was not cooperative. [Jaime] did not testify at the trial.

"When [petitioner] was interviewed by police afterward, [petitioner] repeatedly said that attempted murder 'charges were too much and that he was gonna lose everything.'

"According to Woodlake police officer [J.] Garcia, the department's gang officer, [petitioner] is a Norte[ñ]o gang member while [Jaime] is a Sure[ñ]o gang member, and Rafael is a Sure[ñ]o gang member associate. The officer testified that the entire incident, from the vandalism to the stabbing, was gang related. He also outlined the Norte[ñ]o-Sure[ñ]o gang dispute, and described [petitioner's] prior encounters with police officers where [petitioner] either admitted to being a gang member, was involved in altercations that were gang related, or had tattoos and clothing consistent with gang membership.

"Reyna [M.] testified that, in July 2003, Manuel [C.], Rafael's brother, got in a dispute with [petitioner], who accused Manuel of disrespecting his house. [Petitioner], armed with a knife, tried to force open a door, broke a window and threatened to beat up Manuel, calling him a scrap. [Petitioner] was arrested for vandalism based on the broken window, and police found a pocket knife and red bandana on him." (*People v. Castaneda* (Oct. 1, 2009, F055832) [nonpub. opn.] (*Castaneda*).)

## II.    Underlying Convictions

In 2008, a jury convicted petitioner of premeditated attempted murder (§§ 187, subd. (a), 664; count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). As to count 1, the jury found gang enhancements and an enhancement for personal infliction of great bodily injury to be true. (§§ 186.22, subd. (b)(1)(C), (b)(4), 12022.7, subd. (a).) As to count 2, the jury also found gang enhancements and an enhancement for personal infliction of great bodily injury to be true. (§§ 186.22, subd. (b)(1)(C), 12022.7, subd. (a).) The trial court sentenced petitioner to an aggregate term of life with the possibility of parole, plus 18 years.

Relevant here, petitioner argued on appeal that there was insufficient evidence to support the jury's verdict that he was guilty of attempted premeditated murder because there was a lack of substantial evidence that he possessed the requisite intent to kill. This court determined substantial evidence supported the finding of intent to kill. We

modified the abstract of judgment in ways not relevant here, but otherwise affirmed. (*Castaneda*, *supra*, F055832.)

### III.     Section 1172.6 Petition

Petitioner filed a section 1172.6 petition for resentencing on his attempted murder conviction on February 25, 2022.  Counsel was appointed to represent petitioner.

The prosecution opposed the petition, arguing petitioner was statutorily ineligible for relief.  Specifically, the People argued the jury found petitioner was a direct perpetrator of the attempted murder based on the jury's finding that petitioner personally inflicted great bodily injury on the victim.  Additionally, by finding that the attempted murder was committed willfully, deliberately, and with premeditation, the jury also found petitioner acted with express malice.  The People included this court's opinion from petitioner's direct appeal as an exhibit to their opposition.

No reply by petitioner is contained in the record on appeal.

The matter was heard on May 25, 2022.  Petitioner argued the People's opposition impermissibly relied on the statement of facts set forth in this court's opinion in petitioner's direct appeal.  The People responded that the jury's findings of great bodily injury and premeditated attempted murder, standing alone, established petitioner's ineligibility for resentencing.  The superior court stated, "I'm not seeing . . . any basis for that kind of theory by which the jury could have imputed malice as opposed to have decided that [petitioner] personally inflicted this injury on this victim with the intent to kill based on the verdicts."  Petitioner responded, "I think there are . . . other felonies that were occurring that may not have been charged in this case that he could have been convicted of felony murder for."  The court recessed to review relevant case law before resuming the hearing and denying the petition as follows:

> "I think that this is a case where I don't need to engage in any weighing of evidence or exercising any discretion to make the determination that [petitioner] cannot establish a prima facie case here.  [¶]  In reviewing the appellate opinion, it's just clear to me that as a matter of law he's not

6.

eligible for relief here.  The appellate opinion discusses the facts and the applicable law in a way that's relevant here and, in the words of [*People v. Lewis* (2021) 11 Cal.5th 952] 'does supply the answers.'

"[Petitioner] challenged his conviction on the grounds there was insufficient evidence to show that he had the intent to kill, and the Court of Appeal discussed and rejected that finding that there was sufficient evidence that [petitioner] had the requisite intent to kill, in other words, express malice, in this particular case based on the facts that he personally stabbed the victim in this case repeatedly.

"I think that that finding . . . is not subject to dispute at this stage, and, therefore, there's . . . no question in my mind here that [petitioner] can still be convicted of murder, the change in the law notwithstanding.

"There's no evidence that malice was imputed to him under the felony murder theory, natural and probable consequences theory or any other theory that I'm aware of.  He was convicted of attempted murder with premeditation and deliberation.  The Court of Appeal found that the jury had sufficient evidence to make the finding that the defendant entertained the specific intent to kill and that he personally inflicted the great bodily injury.

"Therefore, the defendant cannot make a prima facie case under [section 1172.6], and the petition is denied."

This timely appeal followed.

## DISCUSSION

### I.     Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)  Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons

7.

convicted of murder, attempted murder, or manslaughter to seek vacatur of the conviction and resentencing. (§ 1172.6, subd. (a); accord, *Strong*, at p. 708.)

Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)-(c); accord, *Strong*, *supra*, 13 Cal.5th at p. 708.) If the sentencing court determines the petitioner has made such a showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the attempted murder conviction. (§ 1172.6, subds. (c), (d)(1).) At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of . . . attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

To demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*People v. Lewis* (2021) 11 Cal.5th 952, 972-974 (*Lewis*); see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

### III. Petitioner is Ineligible for Resentencing as a Matter of Law

Petitioner contends the superior court erred in its analysis by improperly relying on this court's opinion in his direct appeal and applying a sufficiency of the evidence standard. He disputes the People's contentions below that the jury's findings of premeditation and deliberation, and personal infliction of great bodily injury, preclude resentencing as a matter of law. However, as we explain, the record of conviction establishes petitioner is ineligible for resentencing as a matter of law because petitioner's jury was not presented with any imputed malice theories that were eliminated by Senate Bill No. 1437. Thus, any error in the court's analysis is necessarily harmless. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.)

8.

To be eligible for relief pursuant to section 1172.6, petitioner must have been convicted of attempted murder under a natural and probable consequences or other imputed malice theory. (§ 1172.6, subd. (a); accord, *People v. Gentile* (2020) 10 Cal.5th 830, 853.) However, the record of conviction reflects petitioner was not convicted under such theories. The jury was not instructed on felony murder, the natural and probable consequences doctrine, or any theories of aiding and abetting. The instructions did not permit the jury to impute malice to petitioner based on his participation in a crime. Rather, the jury was instructed as follows with regard to attempted murder:

> "To prove that the defendant is guilty of attempted murder, the People must prove that:

>> "1.    *The defendant* took direct but ineffective steps toward killing another person; [¶] AND

>> "2.    *The defendant* intended to kill that person." (Italics added.)

If the jury found petitioner guilty of attempted murder, it was instructed to determine whether the People had proved "the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation" under the following standard:

> "*The defendant* acted willfully if he intended to kill when he acted. *The defendant* deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. *The defendant* premeditated if he decided to kill before acting." (Original italics omitted, italics added.)

To find petitioner guilty of attempted murder and to find true the allegation the attempted murder was done willfully, deliberately, and with premeditation, the jury was required to find that defendant acted with express malice. Because no imputed malice theories were presented to the jury, there is no possibility the jury found petitioner guilty under such theories.

Because petitioner was not convicted of attempted murder under the natural and probable consequences or other imputed malice theory, he is ineligible for resentencing as a matter of law.  (§ 1172.6, subd. (a).)  Accordingly, the petition was properly denied.

## DISPOSITION

The order is affirmed.